E-FILED
Wednesday, 16 November, 2022 06:16:51 PM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT FOR THE
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | |
|---|---|
| H.K. and J.C., through their father and legal guardian CLINTON FARWELL, and M.W., through her mother and legal guardian ELIZABETH WHITEHEAD, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>GOOGLE LLC,<br><br>Defendant. | No. 1:21-cv-01122-SLD-JEH<br><br>Chief Judge Sara Darrow<br><br>**Oral Argument Requested** |

**GOOGLE LLC'S OPPOSITION TO PLAINTIFFS' MOTION TO REMAND**

**GOOGLE LLC'S OPPOSITION TO PLAINTIFFS' MOTION TO REMAND**

## I. INTRODUCTION

Plaintiffs' Motion to Remand ("Motion") their cause of action under section 15(a) of Illinois's Biometric Information Privacy Act ("BIPA") is without legal basis and unconnected to the allegations of the First Amended Complaint ("FAC"). Plaintiffs' choice to move to remand *now*—19 months after Google removed this case to federal court—is a blatant effort to forum shop following this Court's ruling on Google's motion to dismiss and an unsuccessful mediation. The Motion itself glosses over the nuances of the law on standing for section 15(a) claims, and all but ignores the FAC's allegations. Instead, it discusses a string of inapposite cases that concern only one of the three types of alleged violations of section 15(a): the duty owed to the public to *disclose* a publicly available retention schedule. But these Plaintiffs allege that Google engaged in the two other types of alleged section 15(a) violations. Plaintiffs allege that Google did not *comply* with section 15(a)'s requirements that Google delete their Biometric Data[1] and Google did not *develop* a retention and destruction policy as to Plaintiffs' Biometric Data prior to collecting it.[2] It is well-established that these specific factual allegations are sufficient to confer Article III standing at this stage of the case. Tellingly, the Motion never even asserts that Plaintiffs have *not* suffered an injury from Google's alleged violations of section 15(a). The Court should deny the Motion.

---

[1] For convenience in this motion, Google uses "Biometric Data" to refer to "biometric information" and "biometric identifiers" as defined by BIPA. 740 ILCS 14/10.

[2] Google denies any wrongdoing in this matter and discovery will show that a vast majority of the allegations in the complaint are untrue. *See* ECF No. 30. For the purposes of this Motion, though, Google treats the allegations of the FAC as though they were true.

## II. BACKGROUND

### A. Procedural History

Plaintiffs commenced this action in the Circuit Court for McDonough County, Illinois, on November 19, 2020. ECF No. 1-1. Google removed the action to this Court on April 20, 2021, and Plaintiffs did not move to remand. ECF No. 1. Google moved to dismiss the original complaint on May 27, 2021. ECF No. 11. Instead of opposing that motion, Plaintiffs filed the FAC on July 1, 2021, which added an additional Plaintiff, M.W. through her mother and legal guardian Elizabeth Whitehead, and provided greater detail to their allegations, such as the Plaintiffs' ages. ECF No. 14. A month later, Google moved to dismiss the FAC, ECF No. 16; Plaintiffs opposed on September 24, 2021, ECF No. 18; and Google filed an unopposed motion for leave to file a reply on November 5, 2021, ECF No. 19. On March 31, 2022, the Court granted in part and denied in part Google's Motion to Dismiss the FAC.[3] ECF No. 20. Google answered the FAC on June 21, 2022. ECF No. 30.

Over the summer of 2022, the parties agreed to mediate the action and met virtually with a mediator on September 20, 2022. The parties did not settle the lawsuit. On November 2, 2022, Plaintiffs filed the Motion.

### B. The Allegations in the FAC

This case arises from Plaintiffs' allegations that Google collected and retained their Biometric Data and the Biometric Data of similarly situated individuals in violation of BIPA,

---

[3] As the Court knows, it did not "largely deny[] the motion to dismiss" as Plaintiffs suggest. Mot. at 2. The Court granted the motion as to preemption under the Children's Online Privacy Protection Act ("COPPA"), 15 §§ U.S. Code §§ 6501-06, dismissing the claim of the under-13 plaintiff and substantially reducing the size of Plaintiffs' putative class. ECF No. 20 at 14. And it declined to rule on the impact of the Illinois Student Online Personal Protection Act ("SOPPA"), 105 ILCS 85/1–99, absent further briefing. *Id.* at 16. With respect to SOPPA, the Court observed, "If BIPA does not require parental consent [i.e., in the context of the classroom], it is possible Plaintiffs' claims would be frustrated entirely." *Id.* Indeed, it is precisely because the Court did *not* "largely deny[] the motion to dismiss" that Plaintiffs are now seeking a different judge to adjudicate part of their claims.

740 ILCS 14/1 *et seq*., through a suite of educational applications known as Google Workspace for Education ("GWFE").[4] FAC ¶¶ 35, 37-41. These applications include Classroom (assignment tracking), Docs (word processing), Groups (communication and collaboration), Sheets (spreadsheets), and Meet/Chat (audio and video conferencing). ECF No. 16-2. Some schools in Illinois provide to their students Google Chromebook laptops installed with GWFE. *Id.* ¶¶ 26, 38. Chromebooks are equipped with cameras and microphones. *Id.* ¶ 38. The videoconferencing features of the GWFE Meet application utilize both the cameras and microphones to enable students and teachers to hear and see each other in real time. *See* FAC ¶¶ 37-38; ECF No. 16-2. Plaintiffs received and have used GWFE on Chromebooks. *See* FAC ¶¶ 39-40.

Plaintiffs claim that Google recorded Plaintiffs' voices and "imaged their faces" when unspecified features of GWFE "required" them to use the Chromebook's microphone and camera. FAC ¶ 38. Then Google allegedly "extracted, collected, stored, and cataloged each of their 'voiceprints'" and "their 'scans of face geometry.'" *Id*. ¶ 39. Plaintiffs contend that Google "stored and cataloged" their Biometric Data in "its vast database of personally identifying biometric data." *Id.* ¶¶39-40. Finally, Plaintiffs claim that "Google does not have written, publicly available policies identifying their retention schedules, or guidelines for permanently destroying the biometric identifiers and biometric information." FAC ¶¶ 35, 43; *see id*. ¶ 49(e). Plaintiffs bring a single claim under BIPA, *id*. ¶¶ 49-59, that is premised on alleged violations of section 15(a), *id*. ¶ 61, and section 15(b), *id*. ¶¶ 58-60. Only the alleged violations of 15(a) are relevant to the Motion.

[4] In the Motion, Plaintiffs refer to GWFE by its former name, G Suite for Education.

## III. ARGUMENT

### A. Article III Standing for Section 15(a) Claims

Section 15(a) of BIPA includes multiple requirements on regulated parties and, accordingly, provides different theories of liability. It reads:

> A private entity in possession of biometric identifiers or biometric information must develop a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within 3 years of the individual's last interaction with the private entity, whichever occurs first. Absent a valid warrant or subpoena issued by a court of competent jurisdiction, a private entity in possession of biometric identifiers or biometric information must comply with its established retention schedule and destruction guidelines.

740 ILCS 14/15(a). Accordingly, there are three grounds for liability under a section 15(a) claim: (1) the failure ***to develop*** a retention schedule and guidelines for permanently destroying Biometric Data when the initial purpose of its collection has been satisfied or within three years of the individual's last interaction with the regulated party, whichever is shorter, *see e.g.*, *Fleury v. Union Pacific R.R. Co.*, No. 20-CV-00390, 2022 WL 1803357, at *3 (N.D. Ill. June 2, 2022) (applying *Fox v. Dakkota Integrated Sys., LLC*, 980 F.3d 1146 (7th Cir. 2020)), (2) the failure ***to comply*** with the retention schedule and guidelines for destroying Biometric Data when the initial purpose of its collection has been satisfied or within three years of the individual's last interaction with the regulated party, whichever is shorter, *Fox*, 980 F.3d at 1154-55, and (3) the failure ***to disclose*** the retention schedule and guidelines for destroying Biometric Data, *id.* at 1154.

Courts have developed a framework to assess Article III standing for each type of section 15(a) claim. In *Bryant v. Compass Group USA, Inc.*, the Seventh Circuit considered claims

brought under sections 15(a) and 15(b) by a plaintiff who alleged that her employer had installed vending machines operated by the defendant. 958 F.3d 617, 619 (7th Cir. 2020), *as amended on denial of reh'g and reh'g en banc* (June 30, 2020). The machines did not accept cash, but rather users had to scan their fingerprints, which were linked to payment accounts for each user. *Id.* The plaintiff created a payment account and regularly used her fingerprint to make purchases. *Id.* She brought a claim under section 15(a) alleging that the defendant "never made publicly available a retention schedule and guidelines for permanently destroying the biometric identifiers and information it was collecting and storing." *Id.*; *see also Fox*, 980 F.3d at 1148 (describing the section 15(a) claim in *Bryant* as based on "a violation of . . . the duty to publicly disclose a data-retention policy").

The court reasoned that "the duty to disclose under section 15(a) is owed to the public generally, not to particular persons whose biometric information the entity collects" and noted that the plaintiff "allege[d] no particularized harm that resulted from [the defendant's] violation of section 15(a)." *Bryant*, 958 F.3d at 626. Accordingly, the plaintiff "did not suffer a concrete and particularized injury as a result of [the defendant's] violation of section 15(a)" and "therefore lack[ed] standing under Article III to pursue that claim in federal court." *Id.* The court also cautioned that its holding was "limited" to the allegations brought by that plaintiff. *Id.*; *see also Fox*, 980 F.3d at 1154 ("Bryant's claim was extremely narrow, alleging *only* a violation of the section 15(a) duty to *publicly disclose* data retention and destruction protocols." (emphasis in original)).

In the *Fox* case, the Seventh Circuit considered a defendant's alleged failure "to develop, publicly disclose, *and comply with*" the retention schedule and guidelines required by section 15(a). *Fox*, 980 F.3d at 1154 (emphasis in the original). The plaintiff, a former employee of the

defendant, alleged that the defendant had retained her Biometric Data after she left her job. *Id.* The court found that was sufficient injury to maintain the claim in federal court: "The BIPA requirement to implement data retention and destruction protocols protects a person's biometric privacy just as concretely as the statute's informed-consent regime. It follows that an unlawful retention of a person's biometric data is as concrete and particularized an injury as an unlawful collection of a person's biometric data." *Id*. at 1155.

District courts have since applied *Fox* to find that the failure to develop the requisite retention schedule and destruction guidelines can confer standing on an individual whose biometric data has been collected. In *Fleury*, for example, the court relied on *Fox*'s reasoning to hold that "the failure to develop retention and destruction policies once (or before) an entity begins retaining a person's biometric data inflicts a privacy injury in the same way that unlawful collection does." 2022 WL 1803357, at *3. This duty, unlike the duty to disclose the existence of the retention policy, is not owed to the general public because "once an entity collects a person's biometric data, the duty to develop retention and destruction policies becomes one that adheres to the person whose identifiers were collected—much the same way the duty to comply with retention/destruction policies does." *Id.* So, "the duty to develop [is] particularized in a way that the duty to publicly disclose is not." *Id.*; *see also King v. PeopleNet Cor*p., No. 21 CV 2774, 2021 WL 5006692, at *3 n.7 (N.D. Ill. Oct. 28, 2021) ("Collection or retention without a policy is a particularized harm to a plaintiff." (citing *Fox*, 980 F.3d at 1154)).

**B. Plaintiffs' Allegations Confer Standing on Their Section 15(a) Claim**

Plaintiffs' attempt to skip out of federal court by asserting that their cause of action under section 15(a) is the same as in *Bryant* should be rejected because those assertions are divorced from the allegations of the FAC. "Allegations matter" such that "the result of the standing

inquiry for the identical section of a statute will depend on what that section provides and what the plaintiff has alleged." *Thornley v. Clearview AI, Inc.*, 984 F.3d 1241, 1246 (7th Cir. 2021). Here, unlike the plaintiff in *Bryant*, whose claim was based on the failure to *disclose* a retention policy and who alleged no particularized harm from the failure to disclose, *Bryant*, 958 F.3d at 626, Plaintiffs allege that Google unlawfully *retains* their Biometric Data and that Google failed to *develop* the required retention schedule and deletion guidelines. *See Marsh v. CSL Plasma Inc.*, 503 F. Supp. 3d 677, 682 (N.D. Ill. 2020) ("[T]he Plaintiffs have alleged more than mere generalized harm arising from the retention-policy violation. This makes all the difference [from *Bryant*]."). Both types of allegations independently create an injury in fact sufficient to confer Article III standing.

#### a. Plaintiffs Allege That Google Unlawfully Retains Their Biometric Data

Google's alleged violation of section 15(a) goes beyond merely failing to publicly disclose a retention schedule and deletion guidelines. For one, Plaintiffs allege that Google fails to comply with the deletion and retention requirements of section 15(a). *See Fox*, 980 F.3d at 1155 ("[S]ection 15(a) expressly conditions lawful retention of biometric data on the continuation of the initial purpose for which the data was collected."). Plaintiffs allege that Google collected their Biometric Data "each time" they used the cameras or the microphones on their Chromebook laptops. FAC ¶ 40. Rather than delete the Biometric Data when Google had completed the initial purpose of each separate collection, Plaintiffs allege that Google "stored" and "catalogued" that Biometric Data in a "vast database" where it is compared to other Biometric Data of Plaintiffs that had "already [been] stored." *Id.* ¶¶ 39-40; *see also id.* ¶¶ 1 ("the illegal actions of Google in . . . storing" Biometric Data), 6 (Google "catalogues [Biometric

Data] in its vast biometrics database"), 28-29 (Google pledged to "[n]ot knowingly retain student personal information beyond the time period required to support the authorized educational/school purposes, or as authorized by the parent/student," but "Google quickly began breaking the commitments it had made."), 31-32 (Google stores and catalogues Biometric Data in a "vast database" where it is compared to other "already saved" Biometric Data).

The legal issues that Plaintiffs raise also indicate that their claim is based on an alleged failure to comply with a policy containing the requirements of section 15(a). Plaintiffs allege that a question common to the putative class is "whether Google complied with" those policies. FAC ¶ 49(f). And Plaintiffs seek injunctive relief to "requir[e] Google to comply with the BIPA's requirements for the . . . storage of [Biometric Data] . . . including to permanently destroy the biometric data." FAC ¶ 64.

The FAC thus goes beyond the mere procedural failure to publicly disclose a data-retention policy that was at issue in *Bryant*. *See Fox*, 980 F.3d at 1154-55. Rather, this case is analogous to *Duerr v. Bradley University*, where this Court *sua sponte* considered whether the plaintiffs' section 15(a) claim had Article III standing while ruling on a motion to dismiss. 590 F. Supp. 3d 1160, 1167 (C.D. Ill. 2022) (Darrow, J.). This Court found that there was standing to hear the section 15(a) claim even though the plaintiffs alleged that the defendant failed to publicize a retention schedule because they also alleged that the defendant "does not comply with a data-retention schedule and stores 'vast amount[s]' of their biometric information." *Id.* "[A] defendant's failure to comply with a data-retention schedule [is] sufficient to confer an Article III injury." *Id.* The same reasoning and result should apply here. *See also Heard v. Becton, Dickinson & Co.*, 524 F. Supp. 3d 831, 839 (N.D. Ill. 2021) ("[The plaintiff] alleged not only that [the defendant] failed to make a retention schedule and destruction policy publicly

available, but also that [the defendant] did not adhere to such a policy by deleting biometric data."); *Wilcosky v. Amazon.com, Inc*., 517 F. Supp. 3d 751, 761–62 (N.D. Ill. 2021) ("Plaintiffs allege not only that Amazon fails to publish a retention and destruction schedule, but also that Amazon continues to retain, use, and analyze their biometrics indefinitely."); *Hazlitt v. Apple Inc*., 543 F. Supp. 3d 643, 650 (S.D. Ill. 2021) ("The Court finds that this alleged unlawful retention of Plaintiffs' biometric information, potentially indefinitely, constitutes a privacy injury such that Plaintiffs have Article III standing to bring their BIPA section 15(a) claims."); *Neals v. ParTech, Inc*., No. 19-CV-05660, 2021 WL 463100, at *5 (N.D. Ill. Feb. 9, 2021) ("PAR continues to collect, store, and use restaurant employees' biometric data in violation of the BIPA."); *Roberson v. Maestro Consulting Servs. LLC*, 507 F. Supp. 3d 998, 1008 (S.D. Ill. 2020) ("Plaintiffs allege that '[Defendants] did not comply with its established retention schedule and destruction guidelines.' This is also more than the mere procedural failure to publicly disclose a data-retention policy.").

Plaintiffs therefore have Article III standing as to their section 15(a) claim based on allegations that Google failed to comply with BIPA's retention requirements.

#### b. Plaintiffs Allege That Google Does Not Have Policies Governing the Retention and Deletion of Biometric Data

Plaintiffs have Article III standing as to their 15(a) claim for the additional reason that they allege that Google collected and retained their Biometric Data but has not *developed* policies governing the retention and destruction of Biometric Data. This, too, suffices to meet Article III standing requirements. *See Fleury*, 2022 WL 1803357, at *3.

Plaintiffs allege that "Google does not have written, publicly available policies identifying their retention schedules, or guidelines for permanently destroying the biometric

identifiers and biometric information of these children." FAC ¶¶ 35, 43. And they allege that a question common to the putative class is "whether Google ***developed*** a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying [Biometric Data] . . . ." FAC 49(e) (emphasis added).

Further, Plaintiffs clarified in their Response to the Motion to Dismiss the FAC that their allegations go beyond a mere failure to disclose a retention policy and extend to failing to develop one:

> [W]ith respect to retention procedures, both COPPA and BIPA require that Defendant establish deletion requirements. *See* 16 C.F.R. § 312.10; 740 ILCS 14/15(a). But Plaintiffs allege that Defendant failed to do so. *See* FAC ¶ 35 ("Google does not have written, publicly available policies identifying their retention schedules, or guidelines for permanently destroying the biometric identifiers and biometric information of these children.").

ECF No. 18 at 4. Tellingly, they cite to the section of COPPA that requires regulated parties to delete collected information once the purpose of collection has been satisfied; the section does not require regulated parties to publicize any policies. 16 C.F.R. § 312.10.

These allegations are like other BIPA cases where Courts have found injury in fact sufficient to establish Article III standing. For example, in *Kalb v. GardaWorld CashLink LLC*, the complaint alleged, "Defendant does not have written, publicly available policies identifying their retention schedules, or guidelines for permanently destroying any of these biometric identifiers or biometric information." No. 1:21-CV-01092, 2021 WL 1668036, at *3 (C.D. Ill. Apr. 28, 2021). The Court found this allegation sufficient for standing. *Id.*; *see also Roberson*, 507 F. Supp. 3d at 1008 (similar); *Marsh*, 503 F. Supp. 3d at 682-83 ("That is not a mere failure to disclose a retention policy; it is an allegation that [the defendant] has failed to comply with the Act's requirement that a collector of biometric information develop a retention policy.").

Google's alleged collection and storage of Plaintiffs' Biometric Data without policies on the retention and destruction of their Biometric Data therefore constitutes a second basis for Article III standing over Plaintiffs' section 15(a) claim. Because the Court has Article III jurisdiction over all aspects of Plaintiffs' single BIPA claim, Plaintiffs' Motion to Remand should be denied.

## IV. CONCLUSION

For the reasons stated above, Google respectfully requests that the Court deny Plaintiffs' Motion to Remand.

By: */s/ Nicola Menaldo*
One of Their Attorneys

Kathleen A. Stetsko
PERKINS COIE LLP
110 North Wacker Drive, 34th Floor
Chicago, IL 60606-1511
Telephone: 312.324.8400
Email: KStetsko@perkinscoie.com

Nicola Menaldo
PERKINS COIE LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Telephone: 206.359.8000
Email: NMenaldo@perkinscoie.com

Bobbie Wilson, Lead Counsel
Sunita Bali
Samuel Wilson
PERKINS COIE LLP
505 Howard Street, Suite 1000
San Francisco, CA 94105-3204
Telephone: 415.344.7000
Email: BWilson@perkinscoie.com
Email: SBali@perkinscoie.com
Email: SWilson@perkinscoie.com

Dated: November 16, 2022

**CERTIFICATE OF SERVICE**

I, Nicola Menaldo, certify that on November 16, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all attorneys of record. I also certify that I served the foregoing by email to the following attorneys:

I certify under penalty of perjury that the foregoing is true and correct.

DATED this 16th day of November, 2022

*s/ Nicola Menaldo*

Nicola Menaldo
PERKINS COIE LLP
505 Howard Street, Suite 1000
San Francisco, California 94105
Phone: +1.415.344.7000
Fax: +1.415.344.7050

Attorneys for Defendant Google LLC