UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | |
|---|---|
| J.C., through her father and legal guardian CLINTON FARWELL, and M.W., through her mother and legal guardian ELIZABETH WHITEHEAD, individually and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br>v.<br><br>GOOGLE LLC,<br><br>        Defendant.[1] | Case No. 1:21-cv-01122-SLD-JEH |

## ORDER

Before the Court is Plaintiffs' partial motion for remand, ECF No. 32. For the following reasons, the motion is GRANTED.

## BACKGROUND

Plaintiffs J.C., through her father and legal guardian Clinton Farwell, and M.W., through her mother and legal guardian Elizabeth Whitehead, initially filed this putative class action in state court, alleging in a single cause of action that Defendant violated two sections of the Illinois Biometric Information Privacy Act ("BIPA")—740 ILCS 14/15(a) and 740 ILCS 14/15(b)—by using technology on its ChromeBook laptops to collect, store, and utilize Illinois schoolchildren's biometric data.[2] *See generally* Class Action Compl., Not. Removal Ex. A, ECF No. 1 at 10–35. Defendant removed the case to federal court on April 20, 2021. *See* Not. Removal 1, ECF No. 1 at 1–8. Plaintiffs subsequently filed an amended complaint, First Am.

---

[1] This updated caption reflects the Court's prior order. *See* Mar. 31, 2022 Order 1, 16, ECF No. 20 (altering the stylization of Defendant's name and dismissing the claim of former plaintiff H.K.). The Clerk is directed to update the docket accordingly.

[2] The Court has previously recited the allegations underlying the amended complaint in greater detail. *See* Mar. 31, 2022 Order 1–3.

1

Class Action Compl., ECF No. 14, which Defendant moved to dismiss, Mot. Dismiss, ECF No. 16. The Court granted the motion in part, dismissing only the claims of former plaintiff H.K. *See* Mar. 31, 2022 Order 16, ECF No. 20.

On November 2, 2022,[3] Plaintiffs filed the instant motion for partial remand. Mot. Remand 2. Plaintiffs argue that, for want of Article III standing, this Court lacks jurisdiction to hear the section 15(a) portion of their cause of action. *Id.* at 2, 3–5. Defendant opposes the motion. Opp'n Mot. Remand 1, ECF No. 33.

## DISCUSSION

### I. Legal Standard

"[F]ederal courts have subject-matter jurisdiction only if constitutional standing requirements . . . are satisfied." *Collier v. SP Plus Corp.*, 889 F.3d 894, 896 (7th Cir. 2018) (citing *Spokeo, Inc. v. Robins*, 578 U.S. 330, 337–40 (2016)); *see also Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) ("[S]tanding is an essential and unchanging part of the case-or-controversy requirement of Article III."). Article III standing requires, at minimum, that the plaintiff have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo*, 578 U.S. at 338; *see also Cothron v. White Castle Sys., Inc.*, 20 F.4th 1156, 1160 (7th Cir. 2021)

---

[3] Defendant characterizes "Plaintiffs' choice to move to remand . . . 19 months after [removal]" as "a blatant effort to forum shop following this Court's ruling on [Defendant's] motion to dismiss and an unsuccessful mediation." Opp'n Mot Remand 1, ECF No. 33; *see also id.* at 2 n.3 (suggesting that Plaintiffs are merely "seeking a different judge to adjudicate their claims" due to the Court's ruling). "[C]hallenges to subject-matter jurisdiction can . . . be raised at any time prior to final judgment." *Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567, 571 (2004); *see also Hurley v. Motor Coach Indus., Inc.*, 222 F.3d 377, 379 (7th Cir. 2000) ("[T]rue jurisdictional flaws are nonwaivable and can be raised at any time."). To be sure, prompt recognition of jurisdictional defects tends to benefit all involved. *See Henderson v. Shinseki*, 562 U.S. 428, 434–35 (2011) ("Jurisdictional rules may . . . result in the waste of judicial resources and may unfairly prejudice litigants. . . . [I]f the trial court lacked jurisdiction, many months of work on the part of the attorneys and the court may be wasted." (citations omitted)); *cf. In re Brand Name Prescription Drugs Antitrust Litig.*, 248 F.3d 668, 670 (7th Cir. 2001) (suggesting that the plaintiffs' seven-month delay in challenging jurisdiction "may have been reprehensible" and "may even . . . have been a sanctionable tactic"). But to the extent Defendant may be asking the Court to consider the timing of Plaintiffs' motion in its analysis, it declines. Defendant advances no legal argument to that effect.

("At the pleading stage, [Article III] standing requires allegations of a concrete and particularized injury in fact that is traceable to the defendant's conduct and redressable by judicial relief.").

"[T]he party that wants the federal forum . . . has the burden of establishing the court's authority to hear the case," *Thornley v. Clearview AI, Inc.*, 984 F.3d 1241, 1244 (7th Cir. 2021), and "[a]ny doubt regarding jurisdiction should be resolved in favor of the states," *Doe v. Allied-Signal, Inc.*, 985 F.2d 908, 911 (7th Cir. 1993). "If some parts of a single suit are within federal jurisdiction, while others are not, then the federal court must resolve the elements within federal jurisdiction and remand the rest." *Bergquist v. Mann Bracken, LLP*, 592 F.3d 816, 819 (7th Cir. 2010).

## II. Analysis

Because "standing requirements in Illinois courts are more lenient than those imposed by Article III," *Bryant v. Compass Grp. USA, Inc.*, 958 F.3d 617, 622 (7th Cir. 2020), standing disputes often arise when BIPA claims appear in federal court. In such disputes, "[t]he injury-in-fact requirement is usually the main event." *Fox v. Dakkota Integrated Sys., LLC*, 980 F.3d 1146, 1151 (7th Cir. 2020). "The test for injury in fact asks whether the plaintiff has suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Id.* at 1151–52 (quotation marks omitted).

The Seventh Circuit already has held that violations of section 15(b), which prohibits data collection without sufficient notice and authorization, "leads to an invasion of personal rights that is both concrete and particularized." *Bryant*, 958 F.3d at 619. Thus, plaintiffs have standing to bring claims predicated on section 15(b) violations in federal court. *Id.* at 619–627 (reaching this conclusion in that case because the collection of the plaintiff's data constituted both "an

invasion of her private domain . . . like . . . trespass" and an informational injury that "deprived her of the ability to give the informed consent section 15(b) mandates" (emphasis omitted)).

Section 15(a) claims are less straightforward. By way of background, section 15(a) provides that

> [a] private entity in possession of biometric identifiers or biometric information must develop a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within 3 years of the individual's last interaction with the private entity, whichever occurs first. Absent a valid warrant or subpoena issued by a court of competent jurisdiction, a private entity in possession of biometric identifiers or biometric information must comply with its established retention schedule and destruction guidelines.

740 ILCS 14/15(a). The Seventh Circuit has observed that this language imposes a "full range" of duties on BIPA-covered private entities, including developing, making available to the public, *and* complying with a retention schedule and destruction guidelines. *Fox*, 980 F.3d at 1154.

Two recent Seventh Circuit cases guide courts in analyzing standing as it pertains to alleged violations of these duties. In *Bryant*, the plaintiff alleged the defendant violated section 15(a) solely by failing to publish a retention schedule and destruction guidelines. 958 F.3d at 619. Reasoning that a private entity's publication duty "is owed to the public generally," the Seventh Circuit concluded that the plaintiff had not suffered a particularized, concrete injury. *Id.* at 626. Shortly after, however, the court held in *Fox* that an unlawful *retention* of biometric data "is as concrete and particularized an injury as an unlawful collection of a person's biometric data." *Fox*, 980 F.3d at 1155 (emphasis omitted). So the plaintiff could bring a "section 15(a) claim . . . much broader than Bryant's," alleging violations of "the full range of . . . section 15(a) duties," where she was injured by "the unlawful retention of her handprint . . . and the unlawful sharing of her biometric data with [a] third-party." *Id.* at 1154.

4

The inquiry, then, is whether Plaintiffs' allegations here are more in the vein of *Bryant* or *Fox*. *See, e.g.*, *Halim v. Charlotte Tilbury Beauty Inc.*, No. 23 CV 94, 2023 WL 3388898, at *8 (N.D. Ill. May 11, 2023) ("The question . . . is whether [the p]laintiff's [section] 15(a) allegations are more like those in *Bryant* or more like those in *Fox*."); *Carpenter v. McDonald's Corp.*, Case No. 1:21-cv-02906, 2021 WL 6752295, at *3 (N.D. Ill. Nov. 1, 2021) ("The question . . . is whether [the p]laintiff merely alleges [the d]efendant's failure to disclose its policy, or alleges more—like unlawful retention."). Plaintiffs argue that they "advance the same type of [section] 15(a) violation" as the *Bryant* plaintiff rather than "accuse [Defendant] of violating the full range of its section 15(a) duties." Mot. Remand 5 (quotation marks omitted). Defendant maintains its alleged violations "go[] beyond merely failing to publicly disclose a retention schedule and deletion guidelines," Opp'n Mot. Remand 7, and argue that Plaintiffs have standing based on their allegations that it does not comply with section 15(a)'s required data policies or have those policies in the first place, *id.* at 8, 11.

To resolve this dispute, the Court turns to the amended complaint, *cf. Thornley*, 984 F.3d at 1246 ("[A]llegations matter. One plaintiff may fail to allege a particularized harm to himself, while another may assert one."), reading it as a whole, *see Halim*, 2023 WL 3388898, at *8. Importantly, however, the Court's analysis "is . . . limited to the theory [Plaintiffs have] invoked." *Bryant*, 958 F.3d at 626; *see also Thornley*, 984 F.3d at 1248 ("Our job is to decide whether [the plaintiffs] have Article III standing to pursue the case they have presented in their complaint."); *cf. Smith v. GC Servs. Ltd. P'ship*, 986 F.3d 708, 711 (7th Cir. 2021) ("Standing often depends on what theory a plaintiff advances and how injury would be proved."). In the section of the amended complaint describing their cause of action, Plaintiffs cite to section 15(a) after they allege that Defendant

5

> does not publicly provide a retention schedule or guidelines for permanently destroying the biometric identifiers and biometric information of Plaintiffs or the Class members . . . or otherwise indicate that it permanently destroys biometric identifiers and biometric information when the initial purpose for collecting, capturing, or otherwise obtaining such information has been satisfied or within 3 years of its last interaction with Plaintiffs and members of the Class, whichever occurs first.

First Am. Class Action Compl. 24 (quotation marks omitted). Because the amended complaint elsewhere acknowledges that section 15(a) also imposes other duties on private entities, *see, e.g.*, *id.* at 8, this language suggests Plaintiffs' section 15(a) claim is predicated on violation of the publication mandate alone. That all other references to section 15(a) in the amended complaint mention the publication requirement also suggests that Plaintiffs' theory of harm concerns the publication requirement alone, *id*. at 2; *id.* at 8; *id.* at 15; *id.* at 17. *See Woods v. FleetPride, Inc.*, No. 1:21-CV-01093, 2022 WL 900163, at *5 (N.D. Ill. Mar. 27, 2022) (observing that "the allegations that specifically refer to the [s]ection 15(a) claim premise the claim only on the failure to publish").

Despite this focus, Defendant responds that it allegedly violates section 15(a) in other ways that do inflict concrete and particularized injuries on Plaintiffs because Plaintiffs also allege that it fails to comply with a retention schedule and destruction guidelines and has not developed such policies. Opp'n Mot. Remand 7–11. But the plaintiff owns her complaint, *Holmes Grp., Inc. v. Vornado Air Circulation Sys., Inc.*, 535 U.S. 826, 831 (2002), and the Court is reticent to conclude that Plaintiffs have standing on the basis of legal theories seemingly rejected by their cause of action, and that their motion effectively disavows, *see Cottingham v. Ultimate Software Grp., Inc*., Case No. 20-cv-1172-JES-JEH, 2021 WL 9596014, at *4 (C.D. Ill. May 25, 2021) (concluding that, despite the plaintiff's ambiguous complaint, he "cleared up" confusion in his remand briefing by declaring he was only seeking relief for the defendant's

6

violation of the publication requirement); *see also Kislov v. Am. Airlines, Inc.*, 566 F. Supp. 3d 909, 914 (N.D. Ill. 2021) (crediting "unambiguous[]" statement the plaintiffs were not pursuing certain section 15(a) claims).

Further, the Court rejects the premise that Plaintiffs allege Defendant fails to comply with a retention schedule and destruction guidelines in a manner that offends section 15(a). The allegations Defendant cites to, despite how they are characterized, do not directly accuse Defendant of failing to comply with established policies, nor do they describe unlawful retention in violation of section 15(a), *i.e.*, after the data's purpose has been satisfied or past the three-year mark; instead, they describe how Defendant retains data with technology or alleges BIPA violations generally, which is not enough. *See Halim*, 2023 WL 3388898, at *9 ("[N]one of the cited allegations accuse [the defendants] of retaining . . . data in violation of [a] retention schedule . . . ."); *cf. Garner v. Buzz Finco LLC*, Case No. 3:21-CV-50457, 2022 WL 1085210, at *3 (N.D. Ill. Apr. 11, 2022) ("[A]llegations [that the defendant retained biometric data] are not surprising. [The defendants] had to have possessed and stored [the plaintiff's] biometric data at some point if they collected it in violation of [section 15(b)]."). To be sure, that Plaintiffs have proposed whether Defendant complies with these policies as a question of fact common to the putative class introduces ambiguity. *See* Opp'n Mot. Remand 8 (citing First Am. Class Action Compl. 21). But it does not compel concluding otherwise considering the whole of the amended complaint. *See, e.g.*, *Colon v. Dynacast, LLC*, Case No. 20-cv-3317, 2021 WL 492870, at *4 (N.D. Ill. Feb. 10, 2021) (concluding, despite an identical common question of fact, that the section 15(a) claim was based only on a failure to publish).

As to whether Plaintiffs have alleged that Defendant never developed a retention schedule or destruction guidelines in the first place, the latter at least seems quite plausible. *See*

Resp. Mot. Dismiss 4, ECF No. 18 ("[W]ith respect to retention procedures, . . . BIPA require[s] that Defendant establish deletion requirements.  But Plaintiffs allege that Defendant failed to do so." (citations omitted)).  But again, it does not seem to the Court that Plaintiffs intend to actually advance that legal theory as the basis of their section 15(a) claim.  *See* First. Am. Class Action Compl. 24.  Even if they do, the inquiry would not stop there, because the Court would still need to determine whether Defendant's failure inflicted a concrete and particularized injury on Plaintiffs.

At present, courts do not agree as to how to treat section 15(a) claims predicated on a failure to develop the requisite retention schedule and destruction guidelines.  At least one court has suggested that, when no such policies are developed, there are never Article III injuries.  *See FleetPride*, 2022 WL 900163, at *5 ("[The plaintiff] correctly points out that [her complaint] makes no suggestion that [the defendant] failed to destroy her biometric data in violation of a retention policy.  Indeed, there is no publicly available retention policy." (citations omitted)).  Other courts have suggested that, when no such policies are developed, there are always Article III injuries.  *See Marsh v. CSL Plasma Inc.*, 503 F. Supp. 3d 677, 682 (N.D. Ill. 2020) (finding the defendant's "outright" failure to establish a retention schedule and guidelines was a violation satisfying the injury in fact requirement); *cf. Fleury v. Union Pac. R.R. Co.*, Case No. 20-cv-00390, 2022 WL 1803357, at *3 (N.D. Ill. June 2, 2022) ("[O]nce an entity collects a person's biometric data, the duty to develop retention and destruction policies becomes one that adheres to the person whose identifiers were collected—much the same way the duty to comply with retention/destruction policies does.").

The Court need not weigh in here.  For one thing, Defendant's argument is not very substantial.  Defendant asserts that allegations of a failure to develop data policies "suffice[] to

8

meet Article III standing requirements," Opp'n Mot. Remand 9, and that Plaintiffs' allegations are "like other BIPA cases where [district courts] have found injury in fact," *id.* at 10. But Defendant does not explain how those courts reached those conclusions or why they got it right.

And even crediting Defendant's argument that Plaintiffs do twice allege violations of the development requirement, the Court's conclusion that remand is appropriate would not change. The language of the amended complaint, the cause of action, and Plaintiffs' representations to the Court are more powerful clues as to the intended scope of their section 15(a) claim that cannot be ignored. *See Doe v. Allied-Signal, Inc.*, 985 F.2d 908, 911 (7th Cir. 1993) ("doubt[s]" should be resolved in favor of remand). Thus, the Court finds Plaintiffs raise a section 15(a) claim predicated on a violation of the publication requirement alone, and in light of Seventh Circuit precedent and Defendant's failure to argue otherwise, they have no standing to bring that claim because no concrete and particularized injury from that violation has been alleged. Of course, "if . . . [P]laintiffs change their tune in the state court, [Defendant] will be able to attempt to remove again." *Thornley*, 984 F.3d at 1248.

## CONCLUSION

Accordingly, Plaintiffs' partial motion for remand, ECF No. 32, is GRANTED. Plaintiffs' section 15(a) claim is severed from the cause of action and REMANDED to the Circuit Court of the Ninth Judicial Circuit, McDonough County.

Entered this 21st day of August, 2023.

s/ Sara Darrow
SARA DARROW
CHIEF UNITED STATES DISTRICT JUDGE
